UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CONNIE RAY LIVINGSTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 98-L-2621-S |
| | ) | |
| CHAMPION INTERNATIONAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### MEMORANDUM OPINION

This cause comes before the court at the motion docket held on December 22, 1999, on both defendant's motion for summary judgment filed August 16, 1999, and plaintiff's motion for summary judgment filed September 3, 1999. After careful consideration of the briefs and evidentiary materials submitted, this court finds, for the reasons discussed below, that plaintiff's motion is due to be overruled and defendant's motion is due to be granted.

### Facts

In July 1993, plaintiff injured his back while jogging to a machine at work, and has not returned to work since. At the time

he was injured, plaintiff was a salaried foreman and a participant in the Long Term Disability Benefits Plan for Salaried Employees of Champion International Corporation #506 ("Plan"). After the injury, plaintiff applied for temporary disability benefits, and received such benefits from September 1993, until March 1994. After receiving six months of temporary disability benefits, plaintiff became eligible for long term disability benefits under the Plan. He applied for and received these benefits starting March 1994. He received long term disability benefits under the Plan for over two years, until his claim was denied on June 25, 1996, because Champion determined that he failed to meet the more restrictive definition of "total disability" that takes effect 30 months from the onset of the disability. The Plan defines "total disability" to mean "the inability to engage in any occupation or business for wage or profit for which he is or may become reasonably qualified by training, education, or experience." Up until this point, a claimant need only show that he is disabled from his job with Champion. In addition, under the terms of the Plan, the Pension and Employment Benefits Committee is the Plan Administrator and has "the power and authority in its sole discretion to control and manage the operation and administration of the Plan and shall have all powers necessary to accomplish these purposes." The

Plan also states that "if there is a difference of opinion as to whether a Participant meets the requirements of Total Disability, the decision of the Plan Supervisor shall be final and conclusive."

Certain duties in the administration of the Plan have been delegated to a third party administrator. Effective November 1, 1995, Champion retained CORE, Inc. to handle routine administration and review of claims for benefits under the Plan. As one of CORE, Inc.'s primary duties, it reviews medical records provided by claimants and their physicians, reviews such records, and provides Champion with a recommendation as to whether benefits should be granted or denied. The Claims Review Committee at Champion relies on CORE, Inc.'s expertise in assessing the claimant's medical records.

As part of the Plan requirements for the review process, plaintiff was given both an independent medical examination and a functional capacity evaluation. The independent medical examiner, Dr. H. Cobb Alexander, informed defendant that, although plaintiff could probably not return to his regular job with defendant, "it is my opinion that he does not have valid criteria for the assignment of a permanent impairment at least according to the American Medical Association 'Guides to the Evaluation of Permanent Impairment, Third Edition.'" The

functional capacity evaluation, performed by Russell Darrington and Greg Owen, reported that plaintiff "must be considered to be at best at a sedentary work level." This report makes note of plaintiff's inconsistencies in responses, and his unwillingness or inability to perform four out of the five tests, "thereby limiting the validity of the restrictions indicated by the evaluation." Based on all the evidence before it, plaintiff's claim was denied on June 11, 1996 (in a recommendation only) and on July 26, 1996 (in a formal denial), because he was not permanently disabled from performing any occupation.[1] The basis of the denial, as found in the CORE, Inc. case management files, was the reports from Dr. Alexander and the functional capacity evaluation, performed by Russell Darrington and Greg Owen.

Additionally, on May 22, 1996, plaintiff was observed and videotaped driving, picking up a grill at another residence and

---

[1] It must be mentioned that there were two additional reports that Champion had before it. Although Champion did not make reference to these reports in its denial, based on the dates of the reports, it appears that Champion probably had these reports before it at this initial review and denial. The first of these reports was prepared Dr. Benjamin J. Gilson, an orthopedic surgeon chosen by Champion. He stated in a case report prepared for Champion that "the prognosis is therefore poor . . . that [plaintiff] will improve to the point where he can work at all." From the report, it appears that Dr. Gilson examined plaintiff in late Febrary 1996. In addition, Karen Vessell, a vocational rehabilitation expert hired by Champion, concluded that plaintiff was 96% vocationally disabled. It appears from the report that Ms. Vessell examined plaintiff in early October 1995.

lifting it, and mowing his lawn. He was observed bending, twisting, reaching, looking behind himself, walking, and engaging in other such activities. Two days later, he was observed helping put in his pontoon boat on Smith Lake. Plaintiff agreed in his deposition that he did not "appear" to be in any pain while doing these activities.

Plaintiff requested a review on August 19, 1996, but was denied on November 5, 1996, with the basis for such denial being the same as the earlier denial. On November 26, 1996, plaintiff again requested a review and supplemented this request with two vocational assessments and a report from plaintiff's treating physician, Dr. Sammons. The report from Dr. Sammons and one of the vocational assessments stated that plaintiff was totally disabled, and the other vocational assessment reported that plaintiff was 96% disabled. This review was acknowledged on January 20, 1997, and plaintiff was given an opportunity to submit any additional information. On March 7, 1997, plaintiff sent defendant a report by Dr. David R. Longmire who opined that plaintiff was totally and permanently disabled. Plaintiff was informed on April 4, 1997, that the denial had been affirmed, with the same two earlier reports, the videotape, and the reports of reviews by CORE, Inc. which indicated that plaintiff is not totally and permanently disabled from performing any occupation,

as the basis.

## Motion for Summary Judgment

A. Scope of Review

In reviewing a motion for summary judgment, the motion is granted if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama, 941 F.2d 1428, 1437 (11th Cir. 1991). As there is no genuine issue as to any material fact, the only question left to be resolved is whether plaintiff has stated any claim under which he can recover.

B. Standard of Review for Fiduciary Decisions

In determining whether the motion for summary judgment should be granted as to plaintiff's claim for benefits, the claim decision "is to be reviewed under a de novo standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989). When an administrator or fiduciary has been given such discretionary power, the court may only review the actions of a fiduciary under the arbitrary and capricious standard of review. Id. The arbitrary and capricious standard requires the court "to determine whether there was a reasonable basis for [Champion's]

decision, based upon the facts known to the administrator at the time the decision was made." Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989). Since the Plan at issue does grant such discretionary power, Champion's decision will be reviewed under the arbitrary and capricious standard. In light of the fact that a conflict of interest may exist in the present case, this court must first determine if plaintiff has proposed a sound interpretation of the Plan to rival Champion's interpretation. Florence Nightingale Nursing Service, Inc. v. Blue Cross & Blue Shield of Alabama, 41 F.3d 1476, 1481 (11th Cir.), cert. denied, 115 S. Ct. 2002 (1995); Lee v. Blue Cross & Blue Shield of Ala., 10 F.3d 1547, 1550 (11th Cir. 1994); Brown v. Blue Cross & Blue Shield of Ala., 898 F.2d 1556, 1570 (11th Cir. 1990). If the claimant has established a reasonable interpretation, the court must determine whether Champion was arbitrary and capricious in adopting a different interpretation. Florence Nightingale, 41 F.3d at 1481; Lee, 10 F.3d at 1550; Brown, 898 F.2d at 1570. Likewise, if the plan beneficiary is successful in demonstrating substantial conflict of interest on the part of the fiduciary, the fiduciary must also prove that its interpretation was not tainted by self-interest. Brown, 898 F.2d at 1566-67.

C. Application

Champion interpreted the definition of "total disability" as defined in the Plan and determined that plaintiff's disability did not rise to the level of "total disability" as set out in the Plan. There is no dispute that plaintiff was disabled to some extent; the dispute rests in the extent of his disability. Using the facts before Champion at the time of its decision, it was neither arbitrary nor capricious for Champion to determine that plaintiff's disability did not rise to the level of "total disability." The objective of the arbitrary and capricious standard is to determine whether Champion's interpretation of the Plan is a reasonable one, not whether it is the correct one or the interpretation the court would have made on its own. See Dyce v. Salaried Employees Pension Plan of Allied Corp., 15 F.3d 163 (11th Cir. 1994). If Champion's interpretation is reasonable, the fact that plaintiff has an equally reasonable interpretation is not a valid ground for overturning Champion's decision. See Florence Nightingale Nursing Service, Inc. v. Blue Cross & Blue Shield of Alabama, 41 F.3d 1476, 1481 (11th Cir.), cert. denied, 115 S. Ct. 2002 (1995).

Defendant correctly asserts Paramore v. Delta Airlines, 129 F.3d 1446 (11th Cir. 1997), to argue that there was no abuse of discretion. In Paramore, the court found no abuse of discretion where, although plaintiff's treating physician certified

plaintiff's disability, another physician stated that plaintiff could perform some form of sedentary work, and subsequent medical evaluations contained "sporadic, internally inconsistent statement." Champion, just as the defendants in Paramore did, weighed the evidence before it, reasonably reconciled the inconsistencies, and rendered a reasonable determination of whether the plaintiff met the Plan's definition of "total disability." See Brown, 898 F.2d at 1571-72; See Paramore, 129 F.3d at 1447-1452.

As to plaintiff's allegation of a conflict of interest, plaintiff has failed to demonstrate any specific evidence of self-interest. A mere allegation is not enough to automatically warrant a finding against Champion or the elimination of any degree of deference accorded to Champion's determination. The application of the arbitrary and capricious standard to cases involving conflict of interest is shaped by the circumstances of the inherent conflict of interest, but plaintiff has failed to show any more than an admission by Champion that decisions are made by one who is paying out of its own assets.

## Conclusion

Therefore, for the reasons expressed above, summary judgment is appropriate as to plaintiff's claims. As set out in the accompanying order, this court is today granting the defendant's motion for summary judgment and overruling plaintiff's motion for summary judgment.

DONE this 10th day of January 2000.

_____<br>SENIOR JUDGE